# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Woods at Naamans Homeowners     :
Association,     :
               Appellant     :
    :   No. 1330 C.D. 2024
         v.     :
    :   Argued: February 4, 2026
Robert Cavoto, Rae Cavoto, and     :
TD Bank     :

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE LORI A. DUMAS, Judge
              HONORABLE MARY HANNAH LEAVITT, Senior Judge

## *OPINION NOT REPORTED*

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                           **FILED: March 13, 2026**

Woods at Naamans Homeowners Association (Woods) appeals from the judgment entered on September 20, 2024, by the Court of Common Pleas of Delaware County (trial court) against Robert Cavoto and Rae Cavoto (Cavotos).[1] Woods contends the trial court erred by opening judgment, adjusting the amount of the judgment, recognizing a settlement agreement, waiving its legal fees, and awarding $1,500 in counsel fees to the Cavotos offset by the amount owed. Because the trial court resolved disputed factual issues without an evidentiary hearing, we vacate the judgment, vacate the trial court's order entered August 12, 2022, that, *inter alia*, granted the Cavotos' petition to open judgment, and remand for further proceedings.

---

[1] TD Bank is not a party to this appeal. No party requested this Court to amend the caption.

# I. BACKGROUND[2]

We set forth the background and procedural history in our prior decision. *See generally Woods I.* Briefly, in 2021, Woods sued the Cavotos in magisterial district court for $1,740 for unpaid homeowners association fees.[3] Reproduced Record (R.R.) at 175a. The magisterial district court entered default judgment. J., 9/16/21 (reflecting a total sum of $1,867.01). The Cavotos paid $560, which we discuss further below. Woods transferred the judgment to the trial court, filed a writ of execution for $1,307.01 ($1,867.01 minus $560) plus interest, erroneously attached the bank accounts of a nonparty, and discontinued the attachment.

---

[2] "We glean the undisputed facts from the record transmitted to this Court, which" did not include the magisterial district court complaint. *See Woods at Naamans Homeowners Assoc. v. Cavoto* (Pa. Cmwlth., No. 947 C.D. 2022, filed April 1, 2024), 2024 WL 1360868, *1 (*Woods I*). However, the reproduced record includes the complaint. Because no party disputed its accuracy, we will consider it. *See* Pa.R.A.P. 1921 note.

[3] The entirety of the complaint follows:

> Defendant(s) failed to pay the required Association fees to the Plaintiff, [Woods], despite repeated demands. Plaintiff is an Association comprised of owners of housing units within the community. Defendant [sic] is a community unit owner and, pursuant to the Association's Declaration, is responsible for the payment of fees and assessments. Defendant [sic] is currently in arrears for the amount set forth in the enclosed account history. As a result of the ongoing ownership of the unit by the Defendant [sic] within Plaintiff Association, Plaintiff Association's damages are ongoing and continuing. The Defendant [sic] is responsible for all ongoing regular and special assessments, along with all reasonable attorneys' fees, costs of collection, late fees and interest. In addition, Pennsylvania Law permits the association, in its discretion, to accelerate all remaining assessments that may come due through the end of the fiscal year. It is Plaintiff's intent to amend the Complaint at the time of hearing, if necessary, to include all additional fees, costs and interest, as well as to accelerate all remaining monthly installments of the annual assessment through the end of the current fiscal year pursuant to Pennsylvania law. Plaintiff demands judgment in the amount set forth above, plus costs, attorneys' fees and interest.

Compl., 7/2/21, R.R. at 175a.

The Cavotos filed a petition to open or strike the judgment. In support, the Cavotos claimed the parties had settled in September 2021, under which they would pay the $1,867.01 judgment in $80 monthly installments. The alleged settlement agreement also suspended ongoing late fees and interest. Additionally, the Cavotos attached Woods' account statement, dated March 22, 2022, that reflects the Cavotos' October 2021 payment for $560. The $560 payment purported to cover installments from October 2021 through April 2022. The statement did not list any other payments by the Cavotos after October 2021. *See* Pet. to Open and/or Strike J., 4/4/22, at Ex. C.[4]

Woods disputed receiving any executed agreement, which the Cavotos acknowledged, but they maintained the following. They signed and returned the agreement and prepaid seven $80 installments with a $560 lump sum in reliance on the agreement. They also did not appear at the magisterial district court hearing, which entered judgment against them. The Cavotos construed their conduct as manifesting their acceptance of the settlement's terms. Woods countered that even if they had settled, the Cavotos breached the agreement because the $560 prepayment did not relieve them of the obligation to pay $80 the following month.

The trial court heard argument on the Cavotos' petition. The Cavotos reiterated their position that they had settled and that Woods "obtained a default judgment at the Magisterial District Hearing under the terms of the agreement[;] however[,] they agreed that they would do nothing with the judgment unless there was some default or breach on the part of" the Cavotos. Notes of Testimony (N.T.),

---

[4] Specifically, the March 2022 account statement lists the following transactions: the October 29, 2021 payment of $560; a November 17, 2021 delinquent processing fee of $50; a December 2, 2021 legal fee of $269.50; a February 28, 2022 legal fee of $714.94; a March 21, 2022 legal fee of $1,845.71; and an (anticipated) April 1, 2022 association fee of $375. Simply, the statement does not reflect any $80 monthly payment by the Cavotos. The statement also seemingly reflects the suspension of late fees and interest charges after November 2021.

8/9/22, at 5. Further, they "made and [have] been making the $80 a month payment." *Id.* at 7. Woods did not directly challenge the existence of the agreement but instead argued that the Cavotos presented "a lot of irrelevant information" and there was no basis to grant their petition. *Id.* at 8-9.[5]

The trial court granted the petition, reasoning that the "court disagrees, the court thinks that [Woods] was quite overzealous. The court is also in addition to opening the judgment is going to award $1,500 in counsel fees." *Id.* at 9 (citation modified). The court's order granted the petition, recognized a modified settlement agreement reflecting a $1,307.97 (sic) balance (the settlement amount minus the $560 payment), waived counsel fees Woods assessed after September 15, 2021, and awarded the Cavotos $1,500 in counsel fees. The order also provided that the parties agreed to credit the $1,500 counsel fees against the adjusted $1,307.97 balance or to any future assessed dues.[6] Woods' counsel did not object to or otherwise comment

---

[5] Woods argued, in part, as follows: "Your Honor[, the Cavotos'] counsel has provided the court with a lot of irrelevant information for today's proceedings. What is before the court is a petition to open or strike judgment. . . . There is also no meritorious defense as [the Cavotos'] counsel has admitted on the record that his client fell behind in assessments to [Woods]. . . ." N.T. at 8-9 (citation modified). We add that because the hearing on the petition to open occurred in August 2022, nothing of record substantiated the Cavotos' argument that they had continued to pay $80 per month after April 2022.

[6] *Woods I* noted that the actual balance was $1,307.01. *Woods I*, 2024 WL 1360868, *2 n.6. For completeness, the order provides:

1. Any Judgement entered against the Defendant's [sic] in this matter is hereby opened or stricken.
2. The settlement agreement reached by the parties and as reflected in the letter and draft agreement attached to the Petition as Exhibit "A" and dated September 15, 2021 is to be reinstated as modified herein.
   a. The balance due shall be adjusted to or set at $1,307.97 [sic]. That is the 9/15/2021 balance of $1,867.91 [sic] less the payment received of $560.00.
   b. The Defendants shall pay off the adjusted balance at the rate of $80.00/mo. Any amount received from Plaintiff shall be credited to the balance due until it is paid in full.
   c. The Defendants first payment shall be due on the first day of the month

on the offset provision.

Woods appealed that order. *Woods I*, 2024 WL 1360868, at \*4. *Woods I* held that the trial court opened the judgment based on a settlement agreement not of record and quashed the appeal. *Id.* We quashed the appeal because such an order is not appealable as of right under Pa.R.A.P. 311(a)(1). *Id.* This Court reasoned that "the correctness of the trial court's action in opening judgment is postponed until such time as the trial court enters judgment adverse to Woods on the" claim raised in its complaint. *Id.* at \*6.

On remand, Woods praeciped to reduce the trial court's order—*i.e.*, the exact same order that granted the Cavotos' petition to open—"to judgment in the amount of $1,307.97 [sic]." Praecipe, 9/18/24. The prothonotary entered judgment. J., 9/20/24.

Woods timely appealed. The trial court filed an opinion in support of its order opening judgment. In relevant part, the court justified its award of $1,500 counsel fees by explaining that "an award of attorney fees under 42 Pa.C.S. § 2503(7) requires a specific finding of improper conduct." Trial Ct. Op., 12/4/24, at 6. The court found Woods' conduct "improper" because the "$1,867.97 [sic] judgment should not have been transferred to the Court of Common Pleas in January 2022 as

---

immediately following the entry of this Order. Defendants may prepay without penalty.

d. Any attorney fees or other charges assessed by the Plaintiff or Plaintiffs counsel after 09/15/2021 and before the date of this Order are hereby waived.

[e]. All other terms of the 09/15/2021 agreement/settlement not inconsistent herewith shall remain in full force and effect.

3. The Plaintiff shall pay or reimburse the Defendants reasonable attorney fees in the amount of $1,500, within 30 days of the date of this Order. By agreement of all parties the attorney fees due the Defendants may be credited towards the adjusted balance due set forth in paragraph 2 above or to any future Association dues that may be assessed by the Plaintiffs.

Order, 8/12/22.

the Cavotos never missed a payment nor breached the agreement."[7]  *Id.*

## II. ISSUES

Woods raises six issues, which we consolidate as follows.  First, Woods asserts the trial court erred in striking or opening the judgment.  Woods' Br. at 5.  Second, Woods contends the court erred by crediting the Cavotos' $560 payment, reducing the balance to $1,307.01, and imposing an $80 per month payment plan.  *Id.*  Third, Woods maintains that the court erred by (1) waiving legal fees incurred by Woods in collecting the amount owed by the Cavotos, and (2) awarding $1,500 in counsel fees to the Cavotos.  *Id.*

## III. DISCUSSION

### A. Appellate Jurisdiction[8]

Initially, we address the appealability of the trial court's order.  Woods argues, and we agree, that the order is final and appealable because it went beyond merely opening judgment to resolve all claims between the parties.  *See* Woods' Br. at 1 (arguing the order disposed "of all claims and of all parties" under Pa.R.A.P.

---

[7] For completeness, the court's reasoning follows:

The $1,867.97 [sic] judgment should not have been transferred to the Court of Common Pleas in January 2022 as the Cavotos never missed a payment nor breached the agreement.  Woods accepted the $560.00 payment in October 2021.  The Cavotos acted promptly after they became aware Woods unilaterally declared default, transferred the judgment and apparently was unwilling to work out a reasonable resolution.  Additionally, the actions of Woods caused the Cavotos to incur attorney's fees in excess of $2,500.00.  Moreover, in an effort to collect on the improper judgment, Woods attempted to garnish the bank accounts of the Cavotos' son . . . .  For all these reasons, this Court made the requisite finding of improper conduct on August 9, 2022 and the award of $1,500.00 attorney's fees was just.

Trial Ct. Op., 12/4/24, at 6-7 (citation modified).

[8] "Since the question of appealability implicates the jurisdiction of the appellate court, a non-waivable matter, the failure of the parties to raise the issue does not preclude this Court from doing so *sua sponte*."  *Robinson v. City of Phila.*, 706 A.2d 1295, 1297 (Pa. Cmwlth. 1998) (citation omitted).

341(b)(1)). Paragraph one opened the judgment. Paragraph two recognized a modified settlement agreement, set the balance at $1,307.01, imposed an $80 per month payment plan, and waived the counsel fees purportedly incurred by Woods after September 15, 2021. Paragraph three awarded $1,500 in counsel fees to the Cavotos, with an offset clause providing that "the attorney fees due the [Cavotos] may be credited towards the adjusted balance" of $1,307.97. *See* Order, 8/12/22, ¶¶ 1-3.

If the parties did, in fact, offset the fees against the balance, then Woods has nothing to collect and, indeed, apparently owes the Cavotos approximately $193. On its face, this order, now reduced to judgment, resolves all claims between the parties, rendering the order final under Pa.R.A.P. 341(b)(1). Because the order is final, we have appellate jurisdiction and now turn to the merits.[9]

*B. The Merits of the Trial Court's Order*[10]

1. Arguments

We summarize the arguments for Woods' issues together, as they are intertwined. Woods argues the trial court erred by going beyond the scope of a hearing resolving a petition to open by "effectively conduct[ing] a trial" on disputed

---

[9] To be clear, we distinguish finality for purposes of appellate jurisdiction from the trial court's resolution of the underlying claims. An order is final when it purports to dispose of all claims and of all parties. Whether the trial court disposed of those claims properly is a question distinct from finality.

[10] Generally, we would review an order resolving a petition to open judgment for an abuse of discretion. *See Cintas Corp. v. Lee's Cleaning Servs., Inc.*, 700 A.2d 915, 919 (Pa. 1997). When no evidentiary hearing has occurred, we review whether the trial court erred as a matter of law in resolving disputed factual issues in deciding a petition to open. *Duffy v. Gerst*, 429 A.2d 645, 652 (Pa. Super. 1981); *cf. Capstone Cap. Grp. v. Alexander Perry, Inc.*, 263 A.3d 1178, 1185-86 (Pa. Super. 2021) (holding "there existed no dispute as to material fact that required fact-finding prior to the trial court's resolution of [the] petition to open"). We may cite to Superior Court cases for their persuasive value. *Marshall v. Se. Pa. Transp. Auth.*, 300 A.3d 537, 540 n.2 (Pa. Cmwlth. 2023).

factual issues. Woods' Br. at 16. Yet, per Woods, the court prevented it from presenting "any witness testimony or evidence in support of its claim[]." *Id.*; *see also id.* at 11 (disputing the existence of a binding settlement agreement and, if so, whether the Cavotos breached it by failing to make $80 monthly payments notwithstanding the initial $560 lump sum prepayment).

Regarding the $1,500 counsel fee award, Woods argues that the court's finding that Woods was "overzealous" did not satisfy the statutory requirement for "dilatory, obdurate or vexatious conduct." *Id.* at 22-23 (citing 42 Pa.C.S. § 2503(7)). Woods argues that the court's conclusion that "the Cavotos never missed a payment nor breached the agreement" disregarded the settlement term obligating the Cavotos to continue making $80 payments regardless of any prepayment. *Id.* at 23 (citation omitted). Relatedly, Woods maintains that because it could assess counsel fees against the Cavotos under the Uniform Planned Community Act, 68 Pa.C.S. §§ 5101-5414, the court erred by waiving them. *Id.* at 20-22.

The Cavotos concisely respond that the court acted within its discretion. The Cavotos do not dispute the judgment entered in the magisterial district court. Cavatos' Br. at 6. Rather, the Cavotos maintain they never breached the agreement because the $560 payment represented prepayment of seven months. *Id.* at 7-9. Absent any breach, the Cavotos insist Woods' conduct in collecting on the judgment was improper. *Id.* at 9-10.

2. Legal Standards

A petition to open a default judgment invokes the trial court's equitable powers. The petitioner must establish three elements: (1) prompt filing of the petition, (2) a meritorious defense, and (3) a reasonable excuse for the default. *Cintas*, 700 A.2d at 919. Of the three elements, we further discuss the meritorious

8

defense element.

A meritorious defense exists when it justifies relief if proven at trial. *Smith v. Morrell Beer Dist.*, 29 A.3d 23, 26 (Pa. Super. 2011) (stating "the requirement of a meritorious defense is only that a defense must be pleaded that if proved at trial would justify relief" (citation modified)). "In deciding whether a petitioner has shown a meritorious defense, however, we do not decide whether the defense will prevail, but only whether it will be sufficient to take the case to the jury, if the judgment is opened and the petitioner permitted to defend the claim." *Duffy*, 429 A.2d at 652 (citations omitted); *accord Jacks Auto Parts Sales, Inc. v. MJ Auto Body & Repair, LLC*, 305 A.3d 162, 174 (Pa. Super. 2023) (*Jacks*) (stating that in "order to support its petition to open the default judgement, [the petitioner] has the burden to support its allegations of fact with competent evidence, which could include deposition transcripts or live witness testimony, a burden which cannot be avoided by substituting an *ex parte* affidavit unless the respondent either files no answering affidavit or does not deny the veracity of the facts recited in the petition or affidavit").

This standard requires the court to decide whether the petitioner has alleged facts that, if proven, would constitute a cognizable defense. *See Duffy*, 429 A.2d at 652. If the respondent disputes those facts, then the court must hold an evidentiary hearing. *See id.* at 653-54; *see also Jacks*, 305 A.3d at 174. "Without any hearing, one can have no confidence that justice has been done." *Duffy*, 429 A.2d at 654 (citation modified) (observing that a trial court acts "prematurely in deciding a petition to open a default judgment on petition and answer alone where there were at issue material questions of fact" (citation omitted)). *Duffy* thus reversed and remanded to have the trial court determine "the facts, which is to say,

9

whether [the defendants] have or have not reasonably explained their failure to answer the complaint, shown a meritorious defense, and timely filed their petition. The court will then be in a position from which it can exercise its discretion in an informed manner, either to grant or deny the petition to open, according to the evidence before it." *Id.*

### 3. Discussion

Instantly, to grant the petition to open, the trial court had to determine whether the Cavotos established, *inter alia*, a meritorious defense. *See Cintas*, 700 A.2d at 919. The Cavotos alleged that a settlement agreement barred Woods from executing on the judgment. That allegation, if proven, would constitute a meritorious defense. *See Smith*, 29 A.3d at 26 (holding that a petition need only plead a defense that "if proved at trial would justify relief").

Woods disputed both the existence and terms of the settlement agreement. *See Woods I*, 2024 WL 1360868, at *1. Woods alternatively argued that the Cavotos breached the agreement by failing to make subsequent $80 payments after the initial $560 payment. *Id.* at *3.

Once Woods disputed those facts, the trial court could no longer accept the Cavotos' factual allegations as true. *See Duffy*, 429 A.2d at 653-54; *accord Jacks*, 305 A.3d at 174. The court was required to hold an evidentiary hearing to determine whether the Cavotos established the meritorious defense element. *See Duffy*, 429 A.2d at 653-54. Here, no witnesses testified and no evidence was moved into the record. The court resolved the factual disputes based solely on counsels' arguments.

Based on its flawed resolution of disputed facts, the trial court recognized the settlement agreement after modifying the balance owed to $1,307.01, waived Woods' counsel fees assessed after September 2021, awarded the Cavotos

10

$1,500 in counsel fees against Woods, and offset the fees against the balance owed. Order ¶¶ 2-3. The court justified its award by criticizing Woods' conduct as improper because the Cavotos never missed a monthly payment or otherwise breached the settlement agreement. The court's justification obviously flowed from its improper resolution of disputed facts, particularly given the hearing occurred in August 2022 several months after the March account statement attached to the Cavotos' petition.

## IV. CONCLUSION

For these reasons, we vacate the September 20, 2024 judgment, vacate the August 12, 2022 order in its entirety, and remand for further proceedings. We vacate the September 20, 2024 judgment that modified the balance owed because that restores the original judgment transferred from the magisterial district court. We vacate the August 12, 2022 order in its entirety as premature absent an evidentiary hearing. Because Woods disputes the facts alleged by the Cavotos in support of their meritorious defense, on remand, the trial court must permit discovery and hold an evidentiary hearing before deciding whether the Cavotos established all the elements for opening a judgment. To be clear, whether the Cavotos established a meritorious defense justifying the opening of judgment differs from whether the defense prevails at trial.[11]

_____
**LORI A. DUMAS, Judge**

---

[11] Nothing within this decision bars the Cavotos from filing a petition to stay execution.

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Woods at Naamans Homeowners Association,

        Appellant

        v.

Robert Cavoto, Rae Cavoto, and TD Bank

:
:
:
:
:  No. 1330 C.D. 2024
:
:
:
:
:
:

## O R D E R

AND NOW, this 13th day of March, 2026, we VACATE the judgment entered September 20, 2024, by the Court of Common Pleas of Delaware County (trial court), VACATE in its entirety the trial court's order entered August 12, 2022, and REMAND for further proceedings.

Jurisdiction relinquished.

 

**LORI A. DUMAS, Judge**